May I reserve a minute for rebuttal your honor? Yes you may. Thank you. May it please the court. This case presents the issue of whether a strict liability criminal sexual offense under Maine's gross sexual assault statute title 17 AMRSA section 253.1b constitutes a crime of violence under guideline section 4B.1.2. The court below found itself bound by this court's decision in United States v. Irby but offered the opinion that Irby may no longer have validity in light of subsequent United States Supreme Court decisions and the great weight of circuit authority that flowed from those decisions on these types of cases. In 2008 the holding in Begay changed the landscape of the analysis used to determine whether an offense offered as a predicate qualified as a crime of violence. Begay found that the enumerated offenses in the ACCA residual clause, which are identical in all pertinent respects to the enumerated offenses in the residual clause of the guidelines section, and those are burglary of a dwelling, arson, extortion, and offenses which involve the use of explosives. These enumerated offenses limited the scope of the residual clause to offenses roughly similar in kind as well as degree of risk posed to those enumerated offenses. Begay found that all the enumerated offenses involved purposeful, violent, and aggressive conduct. Begay also expressed, expressly pointed out, that the clause, the residual clause, covers crimes similar to the enumerated crimes but not every crime that poses a serious potential risk of physical injury to another. That court found that the DUI case that was before it was not purposeful, violent, and aggressive and was most nearly comparable to strict liability offenses. Sykes, which came after Begay, emphasized the role of intent in this analysis. That case involved Indiana's intentional vehicular flight statute. The intentional mens rea present in that statute left for the court only an analysis of the similarity of the risk posed because the offense was already purposeful given its intent requirement. Sykes does not change the Begay formulation as to the type of strict liability offense present with appellant's gross sexual assault. This offense, Maine's gross sexual assault charge, is neither purposeful, it's strict liability so there's no mens rea, it's not violent, force is irrelevant to this charge, and it's not aggressive. In fact, consent may be present between the actors in the case. In fact, it appears on page 8 of the government's brief that that is in fact what's reflected in the underlying offense in this case as they cite the narrative of those underlying gross sexual assaults in the pre-sentence report. You're not suggesting that violence has to be an element of the offense? Well, I think Begay suggests it's got to be purposeful, violent, and aggressive. That's true, but violence is a likelihood determination that the offense is likely to involve purposeful, violent, and aggressive behavior, is that the inquiry? Well, I agree with the court, but in a case that's strict liability, there seems little possibility that you have purposeful conduct because there's no mens rea at all. But to say the conduct isn't purposeful presumes, at least in my estimation, that a child of 12 or 13 years old or younger, a child under the age of 14, is able to give some type of effective consent. Is likely to be able to contribute to the happening of the conduct. Well, to the extent that consent is or is not present, it's irrelevant to the particular charged case. You just said that aggression isn't present here because of the likelihood of consent. And I'm suggesting to you that any consent that might be given in this situation is probably completely ineffectual. That may be the legal fiction, Your Honor. I don't think it's a fiction at all. I think it's a fact. Well, the actual fact in this case was that it was consensual. But we're not supposed to be looking at this case. We're supposed to be looking at the mine run of cases under this statute. Gross sexual abuse of minors under 14. Yes, but the case before the court belays the notion that there's some sort of typical finding that these cases always, or even in a majority, involve the use of force and don't involve actual consent. That kind of typicality analysis coming out of James is still focused on the elements. And the elements here don't involve consent, it's unnecessary, and don't involve force, it's unnecessary. In fact, I'd suggest to the court that the majority of the case is charged under this statute. Because Section 253 has other prongs that involve threats, compulsion, intimidation, penetration. They're not present in this statute. So prosecutors would resort to this when they have before them a situation where there may be actual consent, although it's not legally competent. And they may have problems with mens rea, or there's an absence of force. So they would default to this kind of charge, which simply doesn't qualify as a crime of violence under the guidelines. I'd suggest to the court that the factors that were relied upon in the Irby case, that these offenses typically occur in close quarters, generally perpetrated by an adult and a child who's smaller, weaker, and less experienced. And those sorts of child are susceptible to acceding to coercive power. Those are the factors laid out there. I suggest that's more the imagined hypothetical that the court used in that instance, and there's no empirical evidence that the majority of the cases coming under this statute, 253.1b, have those factors present. And all of the circuit court cases have now apparently suggested, except for Day in the Second Circuit, that the overbreadth of this kind of a strict liability, sexual offense statute without force or consent, that it just doesn't meet the similarity requirement. How many of those statutes involve minors under the age of 14? Statutory crimes that are limited to minors under the age of 14. Well, those cases I did discuss in the brief. I can't bring up a number, Your Honor. I can bring up a number, and there are only two, and they're both easily distinguishable. But I suggest to the court that the principles involved in the cases, regardless of the chronological age, are identical and flow from the analysis that Begay has offered now on similarity. It's just this kind of issue, where there's no consent or force required, is not roughly similar, either in the sense that there's a minor or a minor. They're in kind or in degree to the enumerated offenses. Burglary of a dwelling, arson, extortion, the use of explosives. It's just a different category of case, and it's that overbreadth that has been at the foundation of those other circuit court cases. I believe there are now six circuits that have found overbreadth in these kinds of statutes, and that they don't meet Begay's standards. I think the government has offered the idea that Sykes undermines Begay in this regard. I suggest it doesn't. There have been post-Sykes cases in some of the circuits who have... Please finish your thought. There have been post-Sykes cases in some of the circuits that found these strict liability offenses nonviolent that have specifically referred to Sykes in a subsequent opinion that favorably applies to Begay. There have been post-Sykes cases in some of the circuits that have found these strict liability offenses nonviolent that have specifically referred to Sykes in a subsequent opinion that favorably approves of their own prior case after Begay finding that these are not crimes of violence. Are those already in your brief? Yes, they are. Thank you. I'm Margaret McGoy for the United States. With the court's permission, I'd like to divide my argument into two sections. One section having to do with this court's precedent on child sex offenses, and the second being whether the Supreme Court's opinions have had any impact on this court's precedence. Since 1998, this court has had seven opportunities to consider the question of whether sexual contact with a child sex offender has had any impact on the court's precedence. So culturally, the same rough justices of sexual contact between an adult and a child presents a serious risk of physical injury to another either under the armed career criminal act or under the sentencing Guidelines provision. Judge Celia, you were on the panel of five of those opinions. You authored three of them. Judge Lynch, you were on the panel on three of those opinions. The court is very well aware of the issue. The court is aware of the number of permutations that there are of child sex offenses in terms of the degree of intent that it is required and the kind of conduct that is punished, whether it's full penetration or whether it is mere touching. Notwithstanding all of those permutations, in the government's view, there are two principle themes that have emerged from this court's precedents. One is the theme that child sex offenses generally occur in close quarters and involve a victim who is smaller, younger, weaker, less experienced, and generally incapable of responding favorably to the coercive influences of an adult. The second theme that has emerged is one that Judge Selya began to raise and that is a focusing on the ages involved. As I read the cases from this circuit, all of them, with the exception of the Sherwood case, involve a statute that punished sexual contact with a child under the age of 14. That means that 13 is universally the cutoff in this circuit and it distinguishes many of the cases cited in the defendant's brief in which other state statutes have punished contact involving a child who is as old as 18, 16 and 18. That difference may not make a lot for people of a certain age, but the difference between 13 and 16 or 13 and 18 is quite significant in the development of a child. Do I assume correctly that the statute would be, this would be the appropriate statute under the main law to charge an offense against a 3-year-old as well as against a 13-year-old? Correct. Correct. What the statute requires is that it be sexual contact as defined by the statute with a person who is not the spouse of the perpetrator and is under the age of 14. So it could go down to 6 months. It could go way down. The second thing that the court has focused on in some of the cases is whether there was an age disparity between the victim and the perpetrator. In Irby, the statute required a 10-year difference. In Richard, the statute required a 3-year difference. But in Meader and Sherwood and Caddo, the statute didn't require any age disparity between the defendant and the perpetrator. Now there are two things that we categorically know about the crime in issue here. One is that we know that the victim can be no longer, no older than 13. We also know categorically that the perpetrator had to have been at least 18 because 18 is the age under main law under which a defendant is prosecuted and convicted as an adult. We have the judgment and commitment papers in this case. We know that this defendant was convicted as an adult. In Caddo, the court also looked to undisputed representations in the pre-sentence report with respect to the defendant's birth date. So if we do that in this case, we in fact know that this defendant was 29 when he convicted, when he perpetrated this crime. So in the government's view, the circumstances of this case are squarely within this court's precedent and this court should uphold it for that reason. But it should also uphold it because it is the right result. The defendant focuses very heavily on the language from Begay that the conduct had to be purposeful, violent, and aggressive. Well, that language gave three members of the Supreme Court pause right off the bat. Subsequently to Begay, Judge Selia, you wrote the opinion in the Williams case in which you specifically addressed the impact of that language on the crime of interstate transportation of a minor for purposes of prostitution. You pointed out that there are cases that fall somewhere in between the limited intent requirements of driving while intoxicated and a clearly violent crime. But you also said that the words purposeful, violent, and aggressive are, and this is your language, imperfect aids and suggested that their application to certain circumstances depended on those circumstances and would change. Now, in the government's view, the Sykes case merely buttresses the government's position that this court should adhere to its own precedent. And it does so for two reasons. One is that the crime at issue there was vehicular flight from a police officer, which as far as the government can tell is nowhere near any of the four enumerated crimes in the Armed Career Criminal Act. In this case, we're dealing with the sentencing guidelines, which have not only the guideline itself, but the guideline commentary. And the commentary has, as an enumerated offense, forcible sex crimes. Well, it is not a stretch of imagination to say that when a minor is involved, the influence, the coercive influence of an adult takes the place of the force requirement. So it is much more closely analogous. But the second part of it is that in Sykes, the majority appears to have picked up on the theme that the dissent in Begay offered with respect to reliance on the language of purposeful, violent, and aggressive. And said there's no textual links between that language and the language of the statute. And there's certainly no textual links between that language and the language of the sentencing guidelines. Even if, however, the government is required to prove that this conduct was purposeful, violent, and aggressive, the government can do so. It is purposeful because in order to convict the defendant under this statute, he had to have acted voluntarily. Intent aside, it had to be voluntary. It is violent for two reasons. One is the risk of violence that Judge Selya alluded to that is inherent in any sexual contact between an adult and a child. It is also violent for the same reason that attempted burglary and burglary are violent, and that is that there is a risk of confrontation. I think it is reasonable to infer that any parent or responsible adult who encounters another adult engaged in sexual contact with a child under 13 would react at a minimum with dismay and might, in addition, react with violence. And in terms of the aggressive component of it, the aggression is in contrast to Chambers, which was a totally passive crime. The crime in Chambers involved no action on the part of the defendant at all. In fact, it was his inaction that caused him to be culpable. In this case, sexual contact with a minor under age 14 requires action on the part of the defendant. Finally, a theme that permeates the Supreme Court cases is the issue of whether the crime in question has some predictive value with respect to the risk of violence in the future. And using this case simply as an example, it shows that sexual contact with a minor under the age of 14 has that predictive value. This defendant was 29 years old when he was convicted of having sex with a 12-year-old girl twice when he had gotten her intoxicated. He was required to register as a sex offender. He did not do that, ignored his responsibilities several times. While he was on unregistered status, he became involved in an episode involving a 4-year-old girl, and those charges are still pending. He has seven criminal history category points, one of them involving a concealed weapon. So even if you use this case as simply representative of the risk of future violence that this kind of crime poses, in the government's view, it does. In the government's view, this defendant richly deserved the one criminal history category point he received as a result of this crime of violence. If the court has other questions, I'd be happy to answer them. Otherwise, the government will urge the court to affirm. Thank you, Ms. McGoey. Quickly, Your Honor, there is no way to convert voluntary conduct into purposeful conduct. An analogy might be the Massachusetts assault and battery law. It requires someone to be acting intentionally, but with recklessness as to attendant circumstances, such as the risks of harm or contact. Here, there can be a similar kind of lack of mens rea as to attendant circumstances on the age of the parties involved. There is no empirical evidence that a 253-1B conviction is predictive of future violence. And to cite a matter in which the defendant has categorically denied committing any offense, that the court discounted and accepted an agreement not to include an adjustment on that basis, and the government participated in that, it's not been proven, it's not been even gone forward to court, so that's not effective.